# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

KEITH WETSELL,

    Plaintiff,

v.

SUMMIT MATERIALS, INC.
HOWARD L. LANCE,
ANNE NOONAN,
JOSEPH S. CANTIE,
ANNE M. COONEY,
SUSAN A. ELLERBUSCH,
JOHN R. MURPHY,
ANNE K. WADE,
STEVEN H. WUNNING,
TAMLA OATES-FORNEY,

    Defendants.

---

**COMPLAINT AND JURY DEMAND
FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

---

Plaintiff, Keith Wetsell ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against Summit Materials, Inc. ("Summit Materials" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Argos North America, Corp., a Delaware corporation ("Argos USA") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all stock transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a September 7, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Transaction Agreement (the "Transaction Agreement").

3. Under the terms of the Transaction Agreement, Summit Materials and Argos USA will combine in a cash and stock transaction valued at $3.2 billion. Post close, Argos USA will have a 31% interest in Summit

4. Thereafter, on November 13, 2023, thereafter amended on November 29, 2023, the Company filed a Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC in support of the Proposed Transaction.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.

6. The Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Summit Materials and Argos USA, provided by Summit Materials and Argos USA management to the Board and the Board's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley") (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created Morgan Stanley, if any, and provide to the Company and the Board.

7. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

8. Plaintiff is a citizen of Arkansas and, at all times relevant hereto, has been a Summit Materials stockholder.

9. Defendant Summit Materials operates as a vertically integrated construction materials company. Summit Materials is incorporated in Delaware and has its principal place of business at 1801 California Street, Suite 3500 Denver, Colorado 80202. Shares of Summit Materials common stock trade on the New York Stock Exchange ("NYSE") under the symbol "SUM."

10. Defendant Howard L. Lance has been a director of the Company at all relevant times. In addition, he serves as the Company's Chair of the Board.

11. Defendant Anne Noonan has been a director of the Company at all relevant times and is also the Company's President and Chief Executive Officer.

12. Defendant Joseph S. Cantie has been a director of the Company at all relevant times.

13. Defendant Anne M. Cooney has been a director of the Company at all relevant times.

14. Defendant Susan A. Ellerbusch has been a director of the Company at all relevant times.

15. Defendant John R. Murphy has been a director of the Company at all relevant times.

16. Defendant Anne K. Wade has been a director of the Company at all relevant times.

17. Defendant Steven H. Wunning has been a director of the Company at all relevant times.

18. Defendant Tamla Oates-Forney has been a director of the Company at all relevant times.

19. Defendants identified in ¶¶ 10 - 18 are collectively referred to as the "Individual Defendants."

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its Principal Offices in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23. Summit Materials operates as a vertically integrated construction materials company. It operates in three segments: West, East, and Cement. The company offers aggregates, cement, ready-mix concrete, asphalt paving mixes, and concrete products, as well as plastics components. It also provides asphalt paving and related services. In addition, the Company operates municipal waste, construction, and demolition debris landfills; and liquid asphalt terminals. It serves the public infrastructure, and residential and nonresidential end markets in the United States; and in British Columbia, Canada. The Company was founded in 2009 and is headquartered in Denver, Colorado.

*The Proposed Transaction*

24. On September 7, 2023, Summit Materials issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **DENVER, (September 7, 2023)** — Summit Materials, Inc. (NYSE: SUM) ("Summit," "Summit Materials," "Summit Inc." or the "Company") is pleased to announce it has entered into a definitive agreement with Cementos Argos S.A. (CCB.CN, CEMARGOS CB) ("Cementos Argos") under which Summit will combine with Argos North America Corp. ("Argos USA"), the U.S. operations of Cementos Argos in a cash and stock transaction valued at $3.2 billion.
>
> Argos USA is among the largest cement producers by total installed capacity in its areas of operations, which include the Southeast, Mid-Atlantic, and Texas. With its asset footprint comprising four integrated cement plants, approximately 140 ready-

mix plants and eight ports, Argos USA's portfolio is well positioned to capitalize on positive demand drivers across public infrastructure, residential, and commercial end-markets. Argos USA has a total installed cement grinding capacity of 9.6 million tons per annum with additional import capacity providing incremental scale and operational flexibility. Approximately 85% of Argos USA EBITDA is generated from its leading cement platform.

The combination of Summit and Argos USA will create the fourth-largest cement platform in the United States and accelerates Summit's 'Elevate Summit' strategy, enhancing the Company's materials-led approach and positioning it for even greater success with a national footprint and significantly improved scale. With a deeper and broader network of assets, Summit and its shareholders will benefit from geographic diversification, expanded operational and commercial capabilities, and the ability to better meet growing demand for high quality construction materials in the United States.

Under the terms of the agreement, Cementos Argos will receive approximately $1.2 billion in cash (~40% of transaction value) subject to closing adjustments, and approximately 54.7 million shares of Summit stock (~60% of transaction value), valuing Argos USA at approximately $3.2 billion based on Summit's closing share price of $36.00 as of September 6, 2023. The transaction reflects a pre-synergized enterprise value to EBITDA multiple of approximately 10x based on full year 2023 estimated EBITDA for Argos USA or below 8x on a post-synergies basis.

Anne Noonan, Summit Materials President and CEO said, "Combining Argos USA with Summit is a significant milestone as we execute against and accelerate our materials-led portfolio strategy. The transaction will extend our geographic reach into high growth markets, creating a leading cement enterprise nationwide, and bring together two talent-rich organizations to innovate and deliver value-added solutions for our customers. Financially, we have clear line of sight to achieving targeted synergies of more than $100 million annually as we unlock the full potential of this powerful combination. The Argos USA team has done an excellent job growing and operating its business, and we look forward to welcoming them, and their expertise, to the Summit family."

Jorge Mario Velasquez, Chairman of the Board at Cementos Argos SA said: "We are committed to strengthen and help shape the future of the combined company: we intend to be long-term shareholders. Our commitment to the success of this platform transcends the transaction itself. We believe in the growth potential and value generation that this transaction offers, and we want to actively participate jointly with the Summit family by contributing our knowledge and expertise to drive that growth."

**Strategic and Financial Benefits of the Transaction**

**Accelerates 'Elevate Summit' Strategy:**

· Creates a materials-led North American leader with over $4 billion in revenue and approximately $1 billion in EBITDA, including synergies.

· Increases Summit's annual EBITDA generated by Aggregates and Cement to 78%, up from 70% at year-end 2022.

· Expands Summit's position in high-growth, underserved MSAs and enhances Summit's ability to meet customer demand for cement in a capacity-constrained domestic market.

· Strengthens Summit's platform for Aggregates growth across the Southern U.S.

**Extends Summit's Leadership Position in Cement:**

· Creates the largest U.S. based cement producer with the addition of Argos USA's four strategically located cement plants.

· Reduces the seasonality of Summit's cement business due to enhanced geographic diversification, particularly in the Southeast, Mid-Atlantic, and Texas.

· Extensive network of rail and port assets provides low-cost modalities, high quality customer service, and operational flexibility.

**Commitment to Excellence, Sustainability, and Innovation:**

· Enhances internal efficiencies, sourcing opportunities, and solutions for customers, building on improvements in EBITDA margin within Summit's Cement Business, which has improved to 36.7%, up nearly 250 basis points since 2020.

· Underscores Summit's commitment to being the most socially responsible integrated construction materials solutions provider. Leveraging a proven track record on sustainability, Summit will apply its unique Green America Recycling Business as well as other fuel and emissions reducing technologies to a broader platform.

· With an extensive pool of talent, resources, and operational expertise, the combined company will be poised to drive innovation in the construction materials industry.

Significant Synergy Generation and Value Creation with a Well Capitalized Balance Sheet:

· Greater than $100 million of annual operational synergies, via improved plant productivity and operational excellence initiatives, sourcing and SG&A optimization, and fleet modernization. Significant synergy realization expected within two years of transaction close.

· Pro forma combined EBITDA, inclusive of synergies, is expected to be approximately $1 billion before additional growth and expansion opportunities associated with a larger platform.
· The transaction is expected to be 15-25% accretive to free cash flow per share as well as accretive to the Company's revenue and EBITDA growth rates.
· The Company expects Return on Invested Capital from the transaction to exceed its Weighted Average Cost of Capital by year three and for the Company's overall ROIC to exceed 10% within two years of close.
· Assuming a first half 2024 close, the Company expects pro forma net leverage to be at or below 3x combined EBITDA (before synergies). The Company will continue to uphold its long-term commitment to maintaining leverage below 3x Net Debt to EBITDA with significant free cash flow generation driving de-leveraging.

**Transaction Terms**

Under the terms of the agreement, which has been unanimously approved by both companies' Boards of Directors, Cementos Argos will receive approximately 54.7 million shares of Summit stock and approximately $1.2 billion in cash, subject to closing adjustments, valuing Argos USA at approximately $3.2 billion based on Summit's closing share price of $36.00 as of September 6, 2023. Cementos Argos will own approximately 31% of the combined company on a fully diluted basis upon the closing of the transaction.

Cementos Argos will enter into a shareholder agreement with Summit at closing of the transaction pursuant to which Cementos Argos will be subject to certain standstill provisions and a 24-month lock-up period on sales of Summit shares.

**Management, Board of Directors**

Following the closing of the transaction, the combined company will be led by Anne Noonan, Summit's President and CEO. At closing, the combined company will continue to operate as Summit Materials and continue to trade on the NYSE under the ticker symbol "SUM."
The Summit Board of Directors is expected to comprise eight Summit-appointed representatives and three representatives appointed by Cementos Argos.

**Financing**

Committed financing for the transaction, in the form of a bridge loan to finance the cash consideration is being provided by Morgan Stanley. Permanent financing expected to be jointly arranged by Morgan Stanley and BofA Securities.

**Timing and Approvals**

> The transaction is expected to close in the first half of 2024, subject to customary closing conditions, including regulatory approvals and approval by Summit Materials shareholders.

***The Materially Misleading and/or Incomplete Proxy Statement***

25. On November 13, 2023, as amended on November 29, 2023, the Summit Materials Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning Summit Materials' and Argos USA's Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections for Summit Materials provided by Summit Materials management to the Board and Morgan Stanley and relied upon by Morgan Stanley in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

27. Notably the Proxy Statement reveals that as part of its analyses, Morgan Stanley reviewed "certain financial projections for Argos USA and Summit prepared by the managements of Argos USA and Summit."

28. The Proxy Statement should have, but fails to provide, certain information in the projections that Summit Materials management provided to the Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

29. With regard to *Summit Financial Projections,* the Proxy Statement fails to disclose material line items, including Management Adjusted EBITDA, Net Capital Expenditures, and Unlevered Free Cash Flow, as well as any underlying inputs, metrics, and assumptions necessary

to calculate these metrics.

30. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

31. The Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

32. With regard to *Argos USA Financial Projections (Base Case and Synergized Case),* the Proxy Statement fails to disclose material line items, including Adjusted EBITDA, Net Capital Expenditures, and Unlevered Free Cash Flow, as well as any underlying inputs, metrics, and assumptions necessary to calculate these metrics.

33. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of the Morgan Stanley's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.

34. The Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

35. In the Proxy Statement, Morgan Stanley describes its opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

36. With respect to the *Comparable Company Analysis* (for Argos USA), the Proxy

Statement fails to disclose:

    a. The specific metrics observed for each comparable company; and

    b. The inputs, metrics and assumptions used to determine the implied multiples reference ranges of 9.8x – 11.0x for 2023E AV/EBITDA and 9.4x – 10.0x for 2024E AV/EBITDA.

37. With respect the *Selected Precedent Transaction Analysis* (for Argos USA), the Proxy Statement fails to disclose:

    a. The specific metrics observed for each of the selected transactions;

    b. The date on which each of the selected transactions closed;

    c. The aggregate value of each of the selected transactions; and

    d. The inputs, metrics, and assumptions used to determine the multiple reference range for AV/LTM EBITDA of 10.0X-12.0X.

38. With respect the *Discounted Cash Flow Analysis* (for Argos USA), the Proxy Statement fails to disclose:

    a. The inputs, metrics, and assumptions used to determine the perpetual growth rates of 2.0% to 3.0%; and

    b. The inputs, metrics, and assumptions used to determine the range of discount rates from 8.8% to 10.3%.

39. With respect the *Discounted Cash Flow Analysis* (for Summit Materials), the Proxy Statement fails to disclose:

    a. The inputs, metrics, and assumptions used to determine the perpetual growth rates of 2.0% to 3.0%; and

    b. The inputs, metrics, and assumptions used to determine the range of discount

rates from 8.8% to 10.3%.

40. With respect to the *Comparable Company Analysis* (for Summit Materials), the Proxy Statement fails to disclose:

  a. The specific metrics observed for each comparable company; and

  b. The inputs, metrics and assumptions used to determine the implied multiples reference ranges of 9.8x – 16.9x for 2023E AV/EBITDA and 9.4x – 15.2x for 2024E AV/EBITDA.

41. With respect the *Discounted Equity Value Analysis* (for Summit Materials), the Proxy Statement fails to disclose:

  a. The inputs, metrics, and assumptions used to determine the NTM AV/EBITDA multiples of 8.5x to 10.5x;

  b. The Company's fully diluted share count as utilized in this analysis; and

  c. The inputs, metrics, and assumptions used to determine the discount rate of 11.0%.

42. With respect the *Undiscounted Equity Research Analysts' Price Targets* (for Summit Materials), the Proxy Statement fails to disclose:

  a. The specific price targets utilized; and

  b. The identity of the firms which generated the utilized price targets.

43. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

44. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.

45. The Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

46. Plaintiff repeats all previous allegations as if set forth in full herein.

47. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

48. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

49. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

50. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

51. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

52. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

53. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

### SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

54. Plaintiff repeats all previous allegations as if set forth in full herein.

55. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

56. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

57. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Summit Materials' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

58. The Individual Defendants acted as controlling persons of Summit Materials within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Summit Materials to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Summit Materials and all of its employees. As alleged above, Summit Materials is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 30, 2023                    **BRODSKY & SMITH, LLC**

                                   By:     */s/ Marc Ackerman*
                                            Marc L. Ackerman
                                            Two Bala Plaza, Suite 805
                                            333 East City Avenue
                                            Bala Cynwyd, PA 19004
                                            Phone: (610) 667-6200
                                            Fax:    (610) 667-9029
                                            Email: mackerman@brodskysmith.com

                                            *Counsel for Plaintiff*